Benj. F. Miller v. Commissioner.
Miller v. Commissioner
Docket No. 3069.
United States Tax Court
1944 Tax Ct. Memo LEXIS 292; 3 T.C.M. (CCH) 335; T.C.M. (RIA) 44118; April 10, 1944
*292 Wallace C. Magathan, Esq., and S. L. McCormick, Esq., for the petitioner. W. W. Kerr, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined deficiencies in petitioner's income tax for the years 1937, 1938, 1939, and 1940, in the total amount of $19,935.64. The only question for determination is whether petitioner was taxable in those years on the entire net income of three trusts which he created for the benefit of his three children. Petitioner is a resident of Columbus, Ohio, and filed his income tax returns for the years in question with the collector for the eleventh district of Ohio. Findings of Fact Petitioner is an attorney engaged in the practice of law in Columbus, Ohio. He has three sons: Thomas O. Miller, Cyrus F. Miller, and Philip B. Miller. In 1937, the eldest son was 21 years of age, the next eldest 17 years of age, and the youngest 15 years of age. On September 28, 1937, petitioner executed three trust indentures by which he created three separate irrevocable trusts, one for the benefit of each of his three children. He named himself trustee and conveyed to himself as trustee of each trust 150 shares *293 of common stock of the Equity Investment Company, which had a value of approximately $16,500. Gift tax returns were filed by petitioner. The aggregate value of the trust corpora represented between 10 per cent and 15 per cent of petitioner's net worth at that time. His wife had independent means and a substantial income of her own. The provisions of the trust indenture for each of the three children are identical, except for the name of the child specifically designated as the primary beneficiary. In the discretion of the settlor-trustee, the income of each trust was to accumulate until the beneficiary reached his 40th birthday, at which time the income and principal of the trust were to be distributed to the beneficiary and the trust terminated. If, however, the settlor-trustee were alive when the beneficiary attained his 40th birthday, it was provided that the trust was to continue in the settlor-trustee's discretion. In the event that the beneficiary died before reaching his 40th birthday, leaving lawful issue, the income of the trust, in the sole discretion of the settlortrustee, could be accumulated or paid to such issue until all of such issue attained the age of 30 years, at *294 which time the principal and accumulations of income were to be distributed equally among the issue. If the beneficiary died before reaching his 40th birthday, leaving no lawful issue, the principal and accumulations of income were to be transferred equally to the corpora of the trusts established for the other two sons. If all the sons were deceased, leaving no lawful issue, "then said trust estate shall revert to the estate of the Donor." The trustee, however, had discretionary power at all times to distribute to the beneficiaries all or any part of the annual trust income, or all or any part of the trust corpus. The powers of the trustee are defined by trust indentures as follows: "Section II. The Trustee shall have power to determine all questions, whether any moneys, securities, properties, stock dividends, rights or other things, are to be treated as capital or income, and of determining the mode in which the expenses of management and other expenses incidental to or connected with the administration of the trust shall be borne as between capital and income. "The Trustee shall have full voting power with respect to any securities held hereunder and may consent to the reorganization *295 or consolidation of any corporation or to the sale to any corporation or person of the property of any corporation, any of the stock, bonds, notes, evidences of indebtedness or other property which may be held by it hereunder, and may do any act with reference to such stocks, bonds, notes, evidences of indebtedness or other property necessary or proper to enable it to obtain the benefit of any such reorganization, consolidation or sale. And in case any of the stocks, bonds, or other securities shall at any time contain an option or options to the holder thereof, or the ownership thereof shall entitle the owner thereof to convert the same into other stocks, bonds or other securities, or in case the right shall be given to the holders of such stocks, bonds, or other securities so held to subscribe for additional stocks, bonds, or other securities, the Trustee may exercise such option or options, make such conversions and subscriptions, and make any necessary payments therefor, and thereafter hold, manage and dispose of such stocks, bonds or other securities so acquired, as a whole or part of the trust fund; or may sell such rights or take such other action with reference thereto and *296 may apply the proceeds as between capital and income as the Trustee may determine. "In case any tax, assessment or other charge, ordinary or extraordinary, shall be levied or made upon the trust fund or upon the Trustee by reason of this trust, or upon any beneficiary, in connection with the fund or the income thereof, said Trustee may pay and discharge such tax or assessment or other charge out of the income or principal of such fund or of the share of the beneficiary against whom said tax or assessment or other charge is made, and if paid out of principal may sell so much of the securities held by it in trust as shall be necessary to provide the funds with which to make such payments. "The Trustee shall have full power to manage and control the property of said trust, with full power to retain, sell, assign, transfer, exchange or otherwise dispose of or deal with all or any part of said property as though the absolute owner thereof, without obligation on any one dealing with the Trustee as to the application of the proceeds therefrom; with full power to invest and reinvest said trust property without restriction as to the character of the investment, to convert personalty *297 into real estate and real estate into personalty, with power to convey, lease, mortgage, improve or otherwise deal with any real estate as though the absolute owner thereof; with power to compromise, adjust and settle all claims with respect to the trust property; to borrow money for said trust as the Trustee may deem advisable; to use such means and methods as the Trustee may choose to collect, receive and recover any part or all of the trust property and the rents, issues, income and profits therefrom. "The Trustee shall have discretionary power, at all times, to determine as to each beneficiary, the time or times and amount of income to be paid or distributed to each beneficiary from the income from the trust property of each beneficiary. "In case an emergency or conditions arise with respect to any beneficiary, which, in the judgment of the Trustee justifies a distribution of a part or all of the principal of the trust property of such beneficiary, the Trustee shall have power to make such distribution of principal as he may determine advisable. "Section IV. If any beneficiary hereunder be a minor at the time of any distribution hereunder the Trustee may, without the appointment *298 of any guardian for said minor, distribute income or property to said minor or may use and apply the same for the benefit of said minor, and in such case evidence of such expenditures or distribution will be sufficient accounting thereof by the Trustee without the intervention of any guardian or any court, or of any other person than such payee; but the Trustee may, in his discretion, require the appointment of a guardian or require such reports and take such steps as he may deem necessary to assure and force the due application of such distribution to the purposes of this trust." Each of the three trusts contained spendthrift clauses which prohibited the beneficiaries from alienating or assigning their trust interests. In the event of such alienation or assignment, the trust was to terminate, but "nevertheless the Trustee shall have discretion to use any part or all of the income otherwise payable to such beneficiary for the benefit of such beneficiary or his dependents as the Trustee may see fit." The trust indentures further provided for the appointment of three individual trustees in the event of the death or resignation of the settlor-trustee. No bond was required of the settlortrustee, *299 but his successors were to give bond in an amount equal to the trust corpora. The right to change the trustees was reserved by the settlor-trustee. Subsequent to the creation of the trusts herein, the Equity Investment Company was consolidated with the Capital Loan and Savings Company, into a corporation named Capital Finance Corporation, and as a result of that consolidation, the 150 shares of stock in each trust were converted into 3109.5 shares of stock of the Capital Finance Corporation. The stock constituting the trust corpora is registered in the name of the trust and the books of the trust are kept by a certified public accountant. Petitioner was the attorney for the Equity Investment Company and the Capital Finance Corporation. He was also attorney for the other corporations. He is secretary of the Capital Finance Corporation and a member of its board of directors. The corporation has outstanding 335,000 shares of stock, of which petitioner owned 9,100 shares, and petitioner's wife owned 600 shares. During the taxable years, there were approximately 750 stockholders of the Capital Finance Corporation. On December 31, 1937, petitioner's father gave to each of the three trusts *300 80 shares of common stock of the Capital Finance Corporation and 40 shares of the preferred stock of that corporation. The shares of stock donated to the trusts by petitioner's father produced income to each trust in the year 1938 in the sum of $360, in the year 1939 in the sum of $405.50, and in the year 1940 in the sum of $429.73. The income of each trust from its creation has been accumulated and such accumulations have been reinvested in new securities. The only distributions of income during the taxable years were to petitioner's son, Thomas O. Miller, an adult, to assist him in securing a legal education. In 1938, he received the amount of $972.21, in 1939 the sum of $674.50, and in 1940 the sum of $231.00. Petitioner desired to provide for the future financial security of his sons. He believed, however, that if they received a substantial amount of property early in life it would destroy their initiative and ambition. He thought that he should be trustee since in his opinion he was better qualified to make distributions of trust property for the best interests of his sons. The net income of the trusts for the years in question was as follows: 1937
1938
1939
1940
Total
Trust No. 1
$1,800
$7,546.05
$6,868.00
$8,038.63
$24,252.68
Trust No. 2
1,800
7,546.05
6,869.13
8,037.27
24,253.45
Trust No. 3
1,800
7,546.05
6,869.13
8,037.27
24,253.45
*301 Petitioner remained in control of the property and in substance the owner thereof, and retained the possibility of direct and indirect benefits from the income. Opinion The only question for determination is whether income of three trusts which petitioner created for the benefit of his three sons is includible in his gross income for the years 1937 to 1940, inclusive. Although respondent contends that the trust income is taxable to petitioner under the provisions of sections 166, 167, and 22 (a) of the Revenue Acts of 1936 and 1937, and the Internal Revenue Code, his argument on brief is devoted entirely to the applicability of section 22 (a) as that section has been construed by the Supreme Court in . He contends that petitioner retained such rights and benefits in the trust corpora as to make him in reality the owner of the corpora within the doctrine of the Clifford case. Petitioner argues that the Clifford case is not applicable, contending that he parted irrevocably with the trust corpora and that the powers reserved are not such as to make the income of the trusts his income. In the Clifford *302 case, the Supreme Court had before it a "family trust" in which the donor was trustee and his wife the income beneficiary. The donor had reserved many powers and rights of control over the corpus. The Court held that the rights and powers retained by the donor were so consistent with the normal concept of full ownership of the corpus, that the donor must be regarded as the owner thereof and taxable upon its income under section 22 (a). In determining the question of ownership of the trust corpus for tax purposes, the dominant fact is the degree of the donor's actual control of the corpus. . The power and rights granted to the beneficiaries must be balanced against those granted to the settlor-trustee. . We think that the facts of this proceeding warrant the conclusion that the principles enunciated in the Clifford case and in , are applicable here. Petitioner, who was a lawyer, drew the trust indentures. It must be assumed that he intended to give himself the extremely broad powers specifically *303 set forth therein. He named himself as trustee with full power to deal with the property as though he were its absolute owner. The beneficiaries were members of his family. He alone had the power to accumulate or distribute any part of the trust income, or corpus. Although the trusts were to continue until the beneficiaries reached their fortieth birthdays, the petitioner had the right to continue the trusts for the balance of his lifetime. During this period, he has the entire control of the sale and investment of the corpora, in whole or in part, and the voting power of any stock constituting the corpora. Since he was the attorney and secretary of the Capital Finance Corporation which was the principal security in the corpora, the voting power of the stock might at some future time be important to him. By virtue of his power of distributing the trust income, he retained a large measure of control over his children. Since the original corpora represented not more than 15 percent of petitioner's net worth at the time of the creation of the trusts, he had income in excess of his normal needs which in his discretion could be allocated to other members of his intimate family group. *304 We think the language of the Buck case, supra, is particularly pertinent here: The retained "satisfactions which are of economic worth" are so numerous, that Buck, like Clifford, "has rather complete assurance that the trust will not effect any substantial change in his economic position"; while he lives, he has as much to say about the management of the corpus as before he made the trust; neither he nor his acquaintances will observe any important practical difference. His household will run on substantially as before, since the incomes of the members of his family will still be subject to his whims; should any of his family expend what he received in a manner displeasing to Buck, or offend Buck in any way, a few words written by Buck can cut off that beneficiary's portion of the income and, later, a few more can restore it. The direct satisfactions of pater families are thus virtually undiminished, as are those indirect satisfactions (stemming from the vicarious pleasure of consumption of the income by his wife and children) which the Supreme Court regards as noteworthy indicia of taxability. The trust instruments further gave petitioner the discretionary power to distribute *305 trust income for the benefit of his sons even though they violated the spendthrift provisions of the trusts and thus forfeited their rights to trust income. Petitioner was also given authority to distribute trust income or corpus to his minor sons. Under the circumstances, it cannot be said that the trusts did not give petitioner the possibility of effective benefits from the principal and income. Cf. . In the final analysis, all petitioner surrendered was the right to personally use the trust corpora. However, as was said in , certiorari denied, , a settlor who is a person of means and who can control the spending of a fund except spending it for himself is sufficiently the owner of the fund to make its income taxable to him under section 22 (a). The question presented in this proceeding was recently decided by this Court under similar facts in . In that case, the taxpayer had created irrevocable long-term trusts and had appointed himself *306 as trustee in each trust with broad administrative powers. In each of the trusts, the immediate payment of trust income to any beneficiary was in his sole discretion. In holding that the trust income was taxable to him, this Court said: When this power of the settlor-trustee over the distribution of the trust income is combined with extraordinarily broad administrative powers over the trust corpus, we cannot escape the conclusion that the doctrine of Helvering v. Clifford is applicable and the incomes of the trusts are taxable to the settlor. Accordingly, it is held that petitioner is taxable upon the incomes derived from the trusts during the taxable years. See also, ; affd., . Decision will be entered for the respondent.